

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD37607
)
JERRY R. YOAKUM, ) **Filed: May 23, 2023**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden

**<u>AFFIRMED</u>**

Jerry R. Yoakum ("Defendant") appeals his convictions, after a jury trial, of child molestation in the first degree, *see* section 566.067, and sexual misconduct against his daughter, a child under the age of 15, *see* section 566.083.[1] Defendant's sole point on appeal claims the circuit court erred in refusing to allow his expert witness, Dr. Ann Duncan-Hively ("Dr. Duncan-Hively"), to testify to "the flaws" in the techniques used by Kim Stewart ("Ms. Stewart"), the forensic interviewer at the Child Advocacy Center ("CAC") who questioned Victim about the abuse.

---

[1] Unless otherwise stated, all statutory citations are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

Because Defendant failed to make an offer of proof at trial of the testimony that Dr. Duncan-Hively would have provided if allowed to testify about those alleged flaws, Defendant's claim is not preserved for appellate review. Defendant does not request plain-error review. Based upon the circumstances noted in this opinion, we decline to exercise our discretion to conduct such review *sua sponte* and affirm the judgment of the circuit court.

## Background[2]

Defendant does not challenge the sufficiency of the evidence to sustain his convictions. Victim was in preschool and five years old when she told a parent volunteer in the lunchroom at her school that "[m]y [d]addy makes me suck[.]" The parent volunteer also stated that Victim "took her [own] hand and kind of slapped at her private area." Victim was taken to the school counselor's office, where she reported that Defendant "let her suck her [sic]" and pointed to the area between her legs. She said that he did it about every day. Victim said that Defendant had his pants down when this happened, and he put his private parts on her private parts.

Later that same day, Victim had her forensic interview with Ms. Stewart, and the video recording of that interview was played for the jury. During the interview, Victim describes Defendant as having made "sticky stuff" from a part she identified on an anatomical drawing as a penis, and she states that Defendant rubbed it on an area that she identified as her vagina, when she did not have any clothes on. Victim gave detailed accounts of what Defendant had done to her.

---

[2] We view the evidence in the light most favorable to the verdict. **State v. Howell**, 626 S.W.3d 758, 760 n.1 (Mo. App. W.D. 2021).

2

Prior to trial, the State filed a motion in *limine* with respect to Dr. Duncan-Hively's testimony. That motion sought to exclude "[a]ny particularized testimony or conclusion from Dr. [] Duncan-Hively about perceived errors in the forensic interview and [Victim] in her responses." The State's motion argued that Dr. Duncan-Hively planned to give specific testimony about errors she believed Ms. Stewart made during the forensic interview process, and thereby comment on Victim's credibility, which was not permitted under Missouri law.

The State later filed a supplemental motion in *limine* that cited a then-recently-decided case from the Western District, ***State v. Antle***, 657 S.W.3d 221 (Mo. App. W.D. 2021), which upheld the exclusion of Dr. Duncan-Hively's proposed testimony regarding her "coding system" in which she scanned the forensic interview for leading questions, insertions, and affirmations.[3] The ***Antle*** court stated that "[a]n expert's testimony regarding improper interviewing techniques in a child sex abuse case runs the real risk of commenting on the victim's credibility, which is clearly impermissible under Missouri law." *Id.* at 235. The State argued that, based upon ***Antle***, the circuit court "should exclude any testimony from Dr. Duncan-Hively about her scoring system and about the specific forensic interview that was conducted in this case."

The circuit court agreed with the State, and, in granting the motion in *limine*, stated,

---

[3] Dr. Duncan-Hively gave a testimonial offer of proof in the ***Antle*** case, wherein she testified that only 26% of the interviewer's questions were open-ended, while 64% were leading. 657 S.W.3d at 233. Thus, Dr. Duncan-Hively planned to opine that the interview was "clearly 'problematic'" and "highly contaminated." *Id.* The Western District upheld the circuit court's holding that such testimony was inadmissible and that Dr. Duncan-Hively's "coding system" did not meet the scientific requirements for expert testimony. *Id.* at 233-34.

They [the *Antle* court] were very antsy about letting an expert cross that line and say, well, yeah, it was -- you know, this question was leading, this question was leading, therefore half of them were leading.

Even if she doesn't, then, make the next statement, you know, they are both going to talk about the [forensic interview]. If they are correct, 10 percent leading is about the norm of -- you shouldn't go above that. That --

I'd be a little bit worried of them asking that question. They get into, "Well, then, you are saying it wasn't fair and reliable, right?" And they don't want her to say that. That's up to the jury to decide whether it was reliable or not after they've heard all this evidence and saw the [forensic] interview.

So that -- seem like we're on the same page?

. . . .

I thought you were going to go through the "What is a leading question?" You know, is the rule that 10 percent is a fairly normal -- if you go above that -- their own training says don't do a lot of leading, don't do a lot of affirmative, et cetera.

But to ask, "Well, how many -- was this question leading? Was that question leading?" I think, is what the court of appeals is saying they don't want you to do.

. . . .

[E]ven with that newest [*Antle*] case, they are very hesitant about letting them go out of general discussion into specific case discussion, is the way I read that case.

But I'll reread it again . . . , and I'm sure we'll have that discussion before she testifies.

**Analysis**

Defendant's sole point claims the circuit court erred

in not allowing defense witness Dr. [] Duncan-Hively to testify to the flaws in [Ms.] Stewart's interviewing techniques of [Victim] on the grounds that her testimony violated a precedent described in [*Antle*], because this violated [Defendant]'s right to present a defense, . . . in that: (1) the criteria under *Antle* are not controlling; (2) Dr. Duncan-Hively's

4

testimony was relevant, helpful to the jury, and reliable; and (3) her testimony related to the interview techniques of [Ms.] Stewart rather than commenting on [Victim]'s credibility, and the trial court's ruling prevented [Defendant] from fully showing the defects and leading questions in the interview process, precluding him from raising a defense that [Victim]'s answers were in response to suggestive interview procedures.

In his brief, Defendant asserts that we must review the circuit court's decision to prohibit Dr. Duncan-Hively from presenting opinion testimony in the manner described above. Although we generally review a circuit court's ruling to either admit or exclude evidence for an abuse of discretion, *see*, *e.g.*, **State v. Shaddox**, 598 S.W.3d 691, 694 (Mo. App. S.D. 2020),

> [a] trial court's ruling granting a motion in limine, in and of itself, preserves nothing for appeal. *State v. Boyd,* 992 S.W.2d 213, 218 (Mo.App. E.D.1999). To preserve the matter for appeal, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proposed evidence is raised and sustained, the proponent must then make an offer of proof. *Id.* An offer of proof made before trial at a hearing on a motion in limine will not suffice. *Id.* at 218–19. *To preserve the matter for appellate review, the offer of proof must be made during trial*. *Id.*

**State v. Marshall**, 131 S.W.3d 375, 377 (Mo. App. E.D. 2004) (emphasis added). *See also* **Petersen v. State**, 658 S.W.3d 512, 515 (Mo. banc 2022) (reaffirming that "[o]nly an objection made timely *at trial* will preserve an issue for appeal") (quoting **State v. Minor**, 648 S.W.3d 721, 729 (Mo. banc 2022)).

During the trial, before Dr. Duncan-Hively took the stand to testify, the circuit court stated the following:

> I think she can only testify to it -- and I'm ruling that she can only testify to general items and not on a case -- or a question-by-question basis. She cannot use her code. There's no science to it. She can't probably give an opinion that in her opinion the [forensic interview] was not -- was not done properly.

5

She can give basic testimony about "What happens if you lead somebody in an interview? Is that typical? What is the norm in -- in questioning child -- alleged child victims? What are the standards?" It will be up to the jury to decide whether that standard is followed.

But I was trying to recall exactly the -- the case, but, I mean, it spells it out pretty clearly at the end. It's a -- it's a general type of "this is what you should be looking for for a good interview" versus what's in this case.

. . . .

The way I read that -- [*Antle*] -- and I'll read it again tonight -- is they think anytime you get into asking, "Was there leading questions in this case?" you are getting right on the edge of talking about veracity of the witness -- of the alleged victim. And they don't want you anywhere near it, is the way I read that case. That's why they won't let you go to, "Oh, how many leading questions were in this case?" It's up to the jury to decide based on what she tells them and what the [forensic] interviewer said, "This is the protocol we follow."

Dr. Duncan-Hively then took the stand and provided expert testimony that consumed nearly 70 pages of transcript. That testimony included extensive opinions about proper – and improper – interview techniques to use during a child's forensic examination. Dr. Duncan-Hively testified that she had performed 3,000 to 4,000 child forensic examinations over the course of her career, and she discussed the guidelines for the three different types of those examinations.

She testified about some of the nuances and potential hazards of each of the forensic examination techniques, such as establishing the child's "language parameters" in order to more accurately understand what the child was referring to, and determining how many other people have questioned the child prior to the examination, in order to understand any potential for contamination of the interview process. Dr. Duncan-Hively testified about leading questions, appropriate interview length for the age of the child, the

6

use of "forced-choice questions[,]".[4] and other factors that can influence the veracity of information provided by a child during a forensic examination.

We agree with the State that, having failed to make an offer of proof during the trial of what Dr. Duncan-Hively's testimony would have been, Defendant failed to preserve this issue for appellate review. *See Marshall*, 131 S.W.3d at 377. Although "[a]n appellate court has complete discretion on whether to review an unpreserved matter for possible plain error[,]" *id.*, under the circumstances present in this case, we exercise our discretion to decline plain-error review. *See Petersen*, 658 S.W.3d at 517 (declining to grant plain-error review under similar circumstances).

The judgment of the circuit court is affirmed.


DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS

---

[4] Dr. Duncan-Hively offered "Was he on top, underneath, or something else?" as examples of forced-choice questions, and she opined that they introduce error into the process, particularly for young children.